UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

LEE ARTHUR THOMPSON,

                    Petitioner,                    Case No. 2:17-cv-178

v.                                                 Honorable Janet T. Neff

CATHERINE S. BAUMAN,

                    Respondent.
_____/

## REPORT AND RECOMMENDATION

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254.

Petitioner Lee Arthur Thompson is incarcerated with the Michigan Department of Corrections at

the Alger Correctional Facility (LMF) in Alger County, Michigan.  Following a two-day jury trial

in the Grand Traverse County Circuit Court, Petitioner was convicted of two counts of first-degree

criminal sexual conduct (CSC-I), in violation of Mich. Comp. Laws § 750.520b, and two counts

of second-degree criminal sexual conduct (CSC-II), in violation of Mich. Comp. Laws § 750.520c.

On September 24, 2014, the court sentenced Petitioner as a third habitual offender, Mich. Comp.

Laws § 769.11, to concurrent prison terms of 30 to 50 years on the CSC-I convictions and 10 to

30 years on the CSC-II convictions.[1]

On October 17, 2017, Petitioner filed his habeas corpus petition raising four

grounds for relief, as follows:

---

[1] Petitioner challenged his maximum sentence for the CSC-II convictions because the sentences were premised on his
status as a third habitual offender when, in fact, he was only a second habitual offender, Mich. Comp. Laws § 769.10.
The Michigan Court of Appeals agreed and remanded the judgment of sentence to the trial court to correct Petitioner's
maximum sentence on the CSC-II counts to 22 years, 6 months.  The reduction in the habitual enhancement did not
affect Petitioner's CSC-I maximum sentences.

I.     Petitioner's Fifth and Fourteenth Amendment rights to due process were violated because there was insufficient credible evidence to convict him of the crimes charged.

II.    The trial court denied Petitioner's Fifth And Fourteenth Amendment rights to due process and a fair trial by allowing the use of Mich. Comp. Laws § 768.27a testimony.

III.   The prosecutor's actions denied the Petitioner's Fifth and Fourteenth Amendment rights to due process and a fair trial.

IV.    Petitioner was denied his Fifth and Fourteenth Amendment rights to effective assistance of counsel.

(Pet., ECF No. 1-3, PageID.18, 31-33.)  Respondent has filed an answer to the petition (ECF No. 7) stating that the grounds should be denied because they are procedurally defaulted, non-cognizable, or meritless.  Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I find that the grounds are meritless.  Accordingly, I recommend that the petition be denied.

<u>Discussion</u>

**I.     Factual allegations**

The Michigan Court of Appeals described the facts underlying Petitioner's convictions as follows:

Fifteen-year-old MP testified at trial that when he was five years old, he and his sister, AP, were sexually molested by defendant.  Until recently, MP believed that his grandmother was his mother.  Defendant was married to the grandmother's sister.

MP described the acts of sexual molestation as follows:

Q. And tell us what happened in the living room.

A. Well . . . he got me and my sister both naked. He started—he made me do—perform oral sex on him. And he was touching me down in my penis area. And then he was touching my sister in the vaginal area.

MP testified that defendant ejaculated in his mouth.  MP described a second incident when defendant tried to get MP and AP naked in the bathroom.  MP stated, "Well, he was trying to get me and my sister naked. And he was getting naked too.

2

As he was getting naked, I hit him in the genital area, in his penis. He laughed at me." MP indicated that defendant was not able to touch him or his sister on that occasion. MP stated that he told his grandmother about what had happened but she did not believe him.

AP, who was 14 years old at the time of trial, testified that defendant molested her when she was younger. AP stated that on more than five occasions defendant "would touch me and my brother inappropriately in ways that men shouldn't touch kids." AP stated, "He would take most likely my pants off. And he would touch me—I don't know what to call it, in my vaginal area." AP stated, "He made my brother suck his penis." AP indicated that she saw this happen and that it happened in the living room. AP stated that defendant also made her "put [her] mouth on his penis." AP indicated that defendant ejaculated in her mouth. AP testified that one day defendant hit her and told her not to tell because she would get in trouble. The prosecutor asked AP why she did not tell anyone and she stated, "Because I was little and he was convincing that I would be the one to get in trouble." When she was in fifth grade, AP told a friend what had happened and the friend encouraged her to tell an adult. AP told a counselor at school and the matter was later referred to the Child Advocacy Center and the police.

(Mich. Ct. App. Op., ECF No. 8-6, PageID.780-781.) "The facts as recited by the Michigan Court of Appeals are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1)." *Shimel v. Warren*, 838 F.3d 685, 688 (6th Cir. 2016) (footnote omitted).

The jury heard between six and seven hours of testimony. The jurors deliberated for about an hour and a half before finding Petitioner guilty of the charged crimes.

Petitioner, with the assistance of counsel, appealed his convictions and sentences to the Michigan Court of Appeals, raising the same issues he raises in his habeas petition. (Pet'r's Appeal Br., ECF No. 8-6, PageID.797-858.) By unpublished opinion issued April 7, 2016, the court of appeals rejected Petitioner's challenges, with the exception of the reduction of the habitual offender enhancement. (Mich. Ct. App. Op., ECF No. 8-6, PageID.780-788.)

Petitioner then filed a *pro per* application for leave to appeal in the Michigan Supreme Court raising the same issues he raises in his habeas petition. (Pet'r's Appl. for Leave to Appeal, ECF No. 8-7, PageID.861-875.) By order entered October 26, 2016, the supreme court denied leave to appeal. (Mich. Order, ECF No. 8-7, PageID.860.)

Petitioner did not file a petition for certiorari in the United States Supreme Court. (Pet., ECF No. 1, PageID.3.)  Instead, he filed this petition.

## II.    AEDPA standard

The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).  This standard is "intentionally difficult to meet."  *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  This Court may consider only the holdings, and not the dicta, of the Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).  In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts.  *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002).  Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37-38 (2011).  Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits.  *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

## III.    Sufficiency of the evidence

Petitioner contends that the evidence introduced at trial was not sufficient to support conviction on CSC-I and CSC-II charges beyond a reasonable doubt. The Michigan Court of Appeals did not agree:

MP and AP each described acts of fellatio defendant forced them to perform on him.  For the purpose of CSC, sexual penetration "means sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body, but emission of semen is not required."  MCL 750.520a(1)(r).  Accordingly, if the jury found that defendant engaged in fellatio with each of these victims, it would be proper to find that he had engaged in "sexual penetration" and find him guilty of CSC 1.

MP and AP each testified that defendant touched their genitals with his hand.  MCL 750.520a(1)(q) states, in pertinent part:

> "Sexual contact" includes the intentional touching of the victim's or actor's intimate parts or the intentional touching of the clothing covering the immediate area of the victim's or actor's intimate parts, if that intentional touching can reasonably be construed as being for the purpose of sexual arousal or gratification [or] done for a sexual purpose . . . .

Under the statute, " '[i]ntimate parts' includes the primary genital area, groin, inner thigh, buttock, or breast of a human being."  MCL 750.520a(1)(f).  Under the circumstances described by the victims (i.e. that the touching accompanied an act of fellatio), the touching can reasonably be construed as being for the purpose of sexual arousal.

(Mich. Ct. App. Op., ECF No. 8-6, PageID.782.)  Petitioner does not challenge that MP and AP offered the testimony identified by the court of appeals as supporting the verdict.  Instead, Petitioner contends that testimony was not credible, there was no forensic evidence supporting his conviction, and other witnesses testified that Petitioner did not have access to the children. (Pet'r's Appeal Br., ECF No. 8-6, PageID.827-839.)

A § 2254 challenge to the sufficiency of the evidence is governed by the standard set forth by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), which is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  This standard of review recognizes the trier of fact's responsibility to resolve reasonable conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  *Id.*  Issues of credibility may not be reviewed by the habeas court under this standard.  *See*

*Herrera v. Collins*, 506 U.S. 390, 401-02 (1993).  Rather, the habeas court is required to examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law.  *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196-97 (6th Cir. 1988).

The *Jackson v. Virginia* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."  *Jackson*, 443 U.S. at 319.  Moreover, because both the *Jackson* standard and AEDPA apply to Petitioner's claims, "the law commands deference at two levels in this case:  First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the Michigan Court of Appeals' consideration of the trier-of-fact's verdict, as dictated by AEDPA."  *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008).  This standard erects "'a nearly insurmountable hurdle'" for petitioners who seek habeas relief on sufficiency-of-the-evidence grounds.  *Davis v. Lafler*, 658 F.3d 525, 534 (6th Cir. 2008) (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

The Michigan Court of Appeals relied on state court authorities; however, the standard it applied to Petitioner's sufficiency claim was identical to the *Jackson* standard: "[i]n considering a challenge to the sufficiency of the evidence, this court determines 'whether a rational trier of fact could find that the evidence proved the essential elements of the crime beyond a reasonable doubt[;]'. . . [f]actual conflicts are to be viewed in a light favorable to the prosecution." (Mich. Ct. App. Op., ECF No. 8-6, PageID.781) (citation omitted).  The appellate court then proceeded to do exactly what *Jackson* instructs.  The court considered the evidence in a light most favorable to the prosecution against the state-law elements of the offenses charged.

7

Petitioner's arguments attempt to turn the *Jackson* standard on its head.  Petitioner invites the Court to view the evidence in a light that favors him.  Petitioner also asks the Court to invade the province of the jury by making credibility determinations regarding the children.

The testimony of the children, standing alone, if credible, was sufficient to convict Petitioner of the charged offenses beyond a reasonable doubt.  Habeas review does not permit this Court to delve into whether the children's testimony was credible.  Petitioner may have presented evidence at trial that contradicted the testimony offered by the children and the prosecutor may have entirely failed to present forensic evidence to support the children's claims; but that does not detract from the children's testimony which, taken as true, suffices to support the verdict. Accordingly, Petitioner has failed to show that the appellate court's rejection of his sufficiency claim is contrary to, or an unreasonable application of, the clearly established federal law set forth in *Jackson*.  He is not entitled to habeas relief on this claim.

## IV.    Propensity evidence

In addition to the testimony of MP and AP, the prosecutor also introduced testimony from their older sister EP.  EP testified:

> One night I fell asleep on the couch . . . .  And when I had woken up later that night, it was like 10:30ish.  It was late.  And I didn't have my nightgown anymore.  And he was sitting underneath me, and his hand was by my underwear and the other one was underneath my, like, neck, head area.

(Mich. Ct. App. Op., ECF No. 8-6, PageID.783.)  The trial court admitted the evidence under Mich. Comp. Laws § 768.27a.  That statutory section permits, in a criminal case in which the defendant is accused of CSC against a minor, the introduction of evidence that the defendant committed CSC or attempted to commit CSC against another minor.  That section "creates an exception to the general rule against propensity evidence under MRE 404(a)."  (Mich. Ct. App. Op., ECF No. 8-6, PageID.784.)  The propensity evidence is still subject to the "'more-probative-

than-prejudicial' balancing test of MRE 403 . . . , but the propensity inference must be weighed in favor of admissibility, not against it.  (*Id*.) (citation omitted).  Petitioner claims the trial court improperly admitted EP's testimony under Mich. Comp. Laws § 768.27a, in part because the probative value of such evidence was outweighed by the prejudice such that the evidence was inadmissible under Michigan Rule of Evidence 403.

The court of appeals rejected Petitioner's challenge under state law.  The court found that EP's testimony fell squarely within the evidence expressly permitted under the statute and that the testimony was more probative than prejudicial.  (Mich. Ct. App. Op., ECF No. 8-6, PageID.784-785.)  To the extent Petitioner contends the court of appeals misapplied its own law, his claim is not cognizable on habeas review.

The extraordinary remedy of habeas corpus lies only for a violation of the Constitution.  28 U.S.C. § 2254(a).  As the Supreme Court explained in *Estelle v. McGuire*, 502 U.S. 62 (1991), an inquiry whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions."  *Id.* at 67-68.  Rather, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Id.* at 68.  State-court evidentiary rulings cannot rise to the level of due process violations unless they offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.  *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quotation omitted); *accord Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).

Perhaps recognizing this limit on habeas jurisdiction, Petitioner also casts his challenge to the admission of EP's testimony as a violation of due process and the *Ex Post Facto* Clause.  With regard to due process, Petitioner argues:

> It is fundamentally unfair and a violation of fair play to allow "similar acts testimony such as was given in this case.  This incident is very old, lacked details as to time and specifics, which also violates due process rights.  How are such acts supposed to be used unless it's for bad character or propensity, both of which are prohibited . . . .

(Pet'r's Appeal Br., ECF No. 8-6, PageID.842.)   Petitioner's claim that "bad character" or "propensity" evidence is prohibited by due process is not supported by clearly established federal law.  The Sixth Circuit has concluded that the United States Supreme court has not adopted that position with regard to "bad character" evidence:

> The kind of foundational unfairness and arbitrariness needed to show that a flawed state court evidentiary ruling rises to the level of a due process violation is not a broad category, and the Supreme Court to our knowledge . . . has never identified an improper-character-evidence case that falls into it.

*Burger v. Woods*, 515 F. App'x 507, 510 (6th Cir. 2013).  And, there is no Supreme Court precedent that holds that a state court violates the Due Process Clause by permitting propensity evidence in the form of other bad acts evidence.  In *Estelle v. McGuire*, the Supreme Court declined to hold that the admission of prior acts evidence violated due process.  *Estelle*, 502 U.S. at 75. The Court stated in a footnote that, because it need not reach the issue, it expressed no opinion as to whether a state law would violate due process if it permitted the use of prior crimes evidence to show propensity to commit a charged crime.  *Id.* at 75 n.5.  While the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, *see Old Chief v. United States*, 519 U.S. 172 (1997); *Huddleston v. United States*, 485 U.S. 681 (1988), it has not explicitly addressed the issue in constitutional terms.  The Sixth Circuit has found that "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by

10

permitting propensity evidence in the form of other bad acts evidence." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).

Therefore, Petitioner's broad proclamations that the admission of "bad character" or "propensity" evidence at his trial categorically violated due process finds no support in clearly established federal law.  Because there is no Supreme Court authority supporting Petitioner's position, he cannot show that the state appellate court's rejection of his position is contrary to, or an unreasonable application of, clearly established federal law as required by 28 U.S.C. § 2254.

Petitioner's challenge based on the *Ex Post Facto* Clause fares no better.  Petitioner contends that because Mich. Comp. Laws § 768.27a became effective on January 1, 2006, at some time after he purportedly attempted the sexual assault on EP and committed the assaults on MP and AP, the statute should not be applied to him. Petitioner claims that the application of Mich. Comp. Laws § 768.27a violates the *Ex Post Facto* Clause of Art. I, § 10, which provides in pertinent part, "No State shall . . . pass any . . . *ex post facto* Law . . . ."  In *Calder v. Bull*, 3 U.S. 386 (1798), Justice Chase identified four categories of impermissible *ex post facto* laws, including the following: "Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offence, in order to convict the offender." *Calder*, 3 U.S. at 390.

The federal courts in Michigan have concluded that Mich. Comp. Laws § 768.27a (or a parallel similar provision in Mich. Comp. Laws § 768.27b) does not reduce or change the evidence that suffices to convict an accused and, therefore, even though § 768.27a might seem to fall within Justice Chase's description, use of the statute to admit evidence of wrongs that predated the statute does not violate the *ex post facto* clause.  *See Niemiec v. Burt*, No. 2:13-cv-10180, 2016 WL 540705, at *5-7 (E.D. Mich. Feb. 11, 2016), *certificate of appealability denied* No. 17-1335

11

(6th Cir. Sep. 22, 2017) ("Reasonable jurists would not debate the district court's determination that the state courts reasonably rejected [Petitioner's Ex Post Facto Clause] claim because the statute merely expanded the range of admissible evidence rather than altering the quantum of evidence necessary for a conviction."); *Buriel v. Smith*, No. 2:13-cv-11703, 2014 WL 5419988, at *7-9 (E.D. Mich. Oct. 22, 2014) ("[T]he rule implemented by § 768.27b is a procedural rule governing the admissibility of evidence; it does not . . . in any way change the prosecutor's burden of proof or the sufficiency of the evidence necessary to meet that burden."); *Hensley v. Lafler*, No. 1:09-cv-937, 2012 WL 5205808, at *13-16 (W.D. Mich. Sept. 26, 2012) ("Mich. Comp. Laws § 768.27a did not change the amount of evidence required for a conviction.") *report and recommendation adopted*, 2012 WL 5205804 (W.D. Mich. Oct. 22, 2012).

However, it is unnecessary for the court to address petitioner's claim that Mich. Comp. Laws § 768.27a is unconstitutional under the *Ex Post Facto* Clause. The Michigan Court of Appeals stated that petitioner's EP's testimony would have been admissible under Mich. R. Evid. 404(b) as well as Mich. Comp. Laws § 768.27a. (Mich. Ct. App. Op., ECF 8-6, PageID.785 n.2.) Thus, even if § 768.27a was unconstitutional, the evidence was properly before the jury under the state's applicable rule of evidence. Thus, any *ex post facto* problem with Mich. Comp. Laws § 768.27a was harmless.

For reasons of finality, comity, and federalism, habeas petitioners "are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'" *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (quoting *United States v. Lane*, 474 U.S. 438, 449 (1986)). Under this test, relief is proper only if the federal court has "grave doubt about whether a trial error of federal law had 'substantial and injurious effect or influence in determining the jury's verdict.'" *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995). In Petitioner's case, because

12

the evidence was admissible under 404(b), the admission of EP's testimony under Mich. Comp. Laws § 768.27a had no influence in determining the jury's verdict. *See, e.g., Harn v. Ludwick*, No. 1:09-cv-494, 2012 WL 4372873, at *5 (W.D. Mich. June 15, 2012), *report and recommendation* adopted 2012 WL 4372823 (W.D. Mich. Sept. 25, 2012), *certificate of appealability* denied No. 12-2585 (6th Cir. June 5, 2013) ("[E]ven if § 768.27a was unconstitutional, the evidence still would have been admitted under Rule 404(b). Reasonable jurists could not debate this conclusion.").

Petitioner has failed to show that the court of appeals' rejection of his challenge to the admissibility of EP's testimony is contrary to, or an unreasonable application of, clearly established federal law. Accordingly, he is not entitled to habeas relief on this claim.

## V.    Prosecutorial misconduct

Petitioner next contends that the prosecutor improperly influenced the testimony of AP by suggesting to her when the abuse occurred. The Michigan Court of Appeals disagreed with Petitioner's characterization:

> Defendant asserts that false memories were suggested to AP by the prosecutor. AP testified about events that happened to her as a young child. Her brother testified regarding similar events. AP testified that, initially, her independent memory of the events had been that they took place after she was five years old. However, she also indicated that the events did not occur after her father came home from prison, which apparently occurred before she was five years old. The implication is that the timing of her father's return and the date of the incidents was clarified for her during discussions with the prosecuting attorney. At most, AP's testimony was inconsistent about timing and revealed that, years later, she did not have a crystal clear memory of the timing of events, and the prosecutor was attempting to help her to clarify events. AP indicated that she remembered now that the events occurred before her father returned and before she was five. That the details were inconsistent went to the weight of the evidence and the credibility of the witness. This Court will not interfere with the role of the trier of fact in determining "'the weight of the evidence or the credibility of witnesses.'" *People v Eisen*, 296 Mich App 326, 331; 820 NW2d 229 (2012), quoting *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008).

(Mich. Ct. App. Op., ECF No. 8-6, PageID.786.)

After reviewing AP's preliminary examination testimony (Prelim. Exam. Hr'g Tr., ECF No. 8-2, PageID.232-242), and her trial testimony (Trial Tr. I, ECF No. 8-3, PageID.452-480), it is apparent that AP had some difficulty fixing the CSC events in time. By the time of trial, however, apparently with the assistance of the prosecutor, AP was able to conclusively state that the CSC events occurred before her father returned from prison because she was confident that once her father returned from prison, Petitioner never babysat MP and AP. AP's reports of the CSC events prior to that determination included facts that might be deemed inconsistent with that determination. AP was certain, however, that the CSC events occurred before her father returned from prison. Petitioner's counsel used her prior statements, statements that might be interpreted as inconsistent with AP's ultimate firm conclusion, to call into question her credibility.

Petitioner contends that the prosecutor's attempts to sort out the timing issues with AP are the equivalent of implanting false memories. He offers no record evidence to support that claim. Indeed, he does not even suggest that AP's conclusion that the events occurred before her father returned from prison is false. The only contrary indication would be AP's prior purportedly inconsistent statements.

For Petitioner to be entitled to habeas relief on the basis of prosecutorial misconduct, he must demonstrate that the prosecutor's improper conduct "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). "[T]he touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982)). In evaluating the impact of the prosecutor's misconduct, a court must consider the extent to which the claimed misconduct tended to mislead the jury or prejudice the petitioner, whether it was isolated or extensive, and whether

14

the claimed misconduct was deliberate or accidental.  *See United States v. Young*, 470 U.S. 1, 11-12 (1985).  The court also must consider the strength of the overall proof establishing guilt, whether the conduct was objected to by counsel and whether a curative instruction was given by the court.  *See id.* at 12-13; *Darden*, 477 U.S. at 181-82; *Donnelly*, 416 U.S. at 646-47; *Berger v. United States*, 295 U.S. 78, 84-85 (1935).

 "Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 U.S. 487, 512 (6th Cir. 2003)).  Indeed, "[t]he Supreme Court has clearly indicated that the state courts have substantial breathing room when considering prosecutorial misconduct claims because 'constitutional line drawing [in prosecutorial misconduct cases] is necessarily imprecise.'" *Slagle v. Bagley*, 457 F.3d 501, 516 (6th Cir. 2006) (quoting *Donnelly*, 416 U.S. at 645).  Thus, in order to obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of his prosecutorial misconduct claim "'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Parker v. Matthews*, 567 U.S. 37, 47 (2012) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).  Petitioner has not met this demanding standard.

The court of appeals determined that the record showed that "the timing of [AP's] father's return and the date of the incidents was clarified for her during discussions with the prosecuting attorney."  (Mich. Ct. App. Op., ECF No. 8-6, PageID.786.)  Although AP's prior inconsistent statements might detract from the weight afforded AP's conclusion and even her credibility,  the record does not show that the conclusion was false.  Absent some showing that the prosecutor drove AP to a false conclusion regarding the timing, there is no "misconduct" at all.  Certainly, Petitioner has failed to show that the prosecutor's misconduct was so obvious and

egregious that the court of appeals' rejection of the claim is, beyond debate, groundless. Accordingly, he is not entitled to habeas relief on his prosecutorial misconduct claim.

## VI.    Ineffective assistance of trial counsel

Finally, Petitioner claims that his trial counsel rendered constitutionally ineffective assistance because he failed to obtain expert testimony to explain how the forensic interviewing of AP and MP was improper and how false memories may have been implanted.  In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel.  To establish a claim of ineffective assistance of counsel, the petitioner must prove:  (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome.  *Id.* at 687.  A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id.* at 689.  The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack).  The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance."  *Strickland*, 466 U.S. at 690.  Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment.  *Id.* at 691.

The Michigan Court of Appeals applied the *Strickland* standard to resolve Petitioner's ineffective assistance of counsel claim.  (Mich. Ct. App. Op., ECF No. 8-6, PageID.786-787.)  The panel concluded:

16

> Defendant does not point to any particular witness or provide authority that failing to call an expert witness in a child-CSC case constitutes ineffective assistance of counsel. Defendant's theory is that the witnesses were coached and that their memories were suggested to them. Even if there were an expert willing to testify in this matter, it is unclear what, if anything, this hypothetical witness could have done to bolster defendant's case.

(*Id.*, PageID.787.)

Because the appellate court properly stated and expressly applied the *Strickland* standard, it cannot be said that the state court's determination was "contrary to" *Strickland*, the clearly established federal law regarding ineffective assistance of counsel. Habeas relief is available, therefore, only if Petitioner shows that the state court's application of the standard was unreasonable. In resolving that question, this Court must afford the state court's decision "double deference." *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 13 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011). In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *see also Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at 102).

The court of appeals' determination appears to be reasonable on its face. Indeed, it echoes clearly established federal law. The United States Supreme Court has recognized that "[t]he selection of an expert witness is a paradigmatic example of the type of 'strategic choic[e]' that, when made 'after a thorough investigation of [the] law and facts,' is 'virtually unchallengeable.'" *Hinton v. Alabama*, 571 U.S. 263, 275 (2014) (quoting *Strickland*). Petitioner attempts to squeeze his challenge within the narrow confines of "challengeable" expert witness decisions by claiming that counsel failed to even explore the issue. (Pet'r's Appeal Br., ECF No.

8-6, PageID.852-858.)  There is no record support for Petitioner's contention that counsel did not investigate and consider the availability of expert witnesses to support Petitioner's defense. Absent such support—absent some record evidence to support his claim that counsel failed to investigate—Petitioner cannot overcome the presumption that counsel's actions fell within "the wide range of professionally competent assistance."  *Strickland*, 466 U.S. at 690.

But, even looking beyond the presumption, it is apparent that Petitioner's claim of ineffective assistance fails.  Petitioner offers no record support for his implicit contention that an expert exists who was willing to testify and whose testimony would be favorable to Petitioner. Without that record support, it is impossible for Petitioner to show that his counsel was professionally unreasonable for failing to pursue such expert testimony or that it made any difference in the result.  "A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim."  *United States v. Ashimi*, 932 F.2d 643, 650 (6th Cir. 1991) (footnote omitted).[4]

---

[4] *See also Pillette v. Berghuis*, 408 F. App'x 873, 887 (6th Cir. 2010) ("The salient point is that nobody knows what she would have said.  Speculation cannot suffice to establish the requisite prejudice."); *Neverson v. Farquharson*, 366 F.3d 32, 45 (1st Cir. 2004) ("[H]e has not offered any evidence of what that person would have said, let alone shown that the lack of such testimony materially prejudiced his defense."); *Zettlemoyer v. Fulcomer*, 923 F.2d 284, 298 (3rd Cir. 1991) ("Zettlemoyer cannot meet his burden . . . based on vague and conclusory allegations that some unspecified and speculative testimony might have established his defense."); *Goins v. Warden, Perry Corr. Inst.*, 576 F. App'x 167, 173 (4th Cir. 2014) ("[Petitioner's] failure to [show] what an expert witness would have testified regarding the mental health evidence . . . reduces any claim of prejudice to mere speculation and is fatal to his claim."); *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009) ("[T]o prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must . . . set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense."); *Patel v. United States*, 19 F.3d 1231, 1237 (7th Cir. 1994) ("Where a petitioner claims his trial counsel failed to call a witness, he must make a specific, affirmative showing as to what the missing evidence would have been, and prove that this witness's testimony would have produced a different result.") (internal citations omitted); *United States v. Vazquez-Garcia*, 211 F. App'x 544, 546 (8th Cir. 2007) ("Recognizing the deferential standard when reviewing the conduct of counsel, we decline to find prejudice in this situation when there is no evidence other than speculation to support the finding."); *Smith v. Adams*, 506 F. App'x 561, 565 (9th Cir. 2013) ("Smith merely speculates as to the expert testimony that could have been produced, but '[s]peculation about what an expert could have said is not enough to establish prejudice.'"); *Sullivan v. DeLoach*, 459 F.3d 1097, 1109 (11th Cir. 2006) ("This prejudice burden is heavy where the petitioner alleges ineffective assistance in failing to call a witness because 'often allegations of what a witness would have testified to are largely speculative.'").

For all of these reasons, Petitioner has failed to show that the state court's rejection of his ineffective assistance claim is contrary to, or an unreasonable application of, clearly established federal law. Accordingly, Petitioner is not entitled to habeas relief on this claim.

### Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, I have examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

I find that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims would be debatable or wrong. Therefore, I recommend that the Court deny Petitioner a certificate of appealability.

Moreover, although I conclude that Petitioner has failed to demonstrate that he is in custody in violation of the constitution and has failed to make a substantial showing of a denial of a constitutional right, I would not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

### Recommended Disposition

For the foregoing reasons, I recommend that the habeas corpus petition be denied. I further recommend that a certificate of appealability be denied. Finally, I recommend that the Court not certify that an appeal would not be taken in good faith.


Dated:    June 5, 2020                                /s/ *Maarten Vermaat*
                                                    Maarten Vermaat
                                                    United States Magistrate Judge


### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).